_____
                                                          )
**In re: Search Warrant**                    )              **00-MJ-138 (JMF)**
_____ )

## MEMORANDUM OPINION AND ORDER

Pending before the Court is petitioner Robert A. Berman's <u>Motion to Unseal Search</u>

<u>Warrant Affidavit(s)</u> [#21], which relates to a search and seizure warrant issued by this Court on

March 25, 2000. The government opposes this Motion only insofar as it would reveal grand jury

material. <u>See</u> <u>Response to Motion to Unseal Search Warrant Affidavit(s) and Motion for</u>

<u>Clarification</u> [#24]. For more than thirteen years, Berman has been attempting to gain access to

all of the records pertaining to the search and seizure of his property and the grand jury that

investigated him. For the reasons stated below, this Court will grant Berman's Motion with

respect to the materials related to the search warrant and will also order other additional relief.

### I.    BACKGROUND

#### A.  Berman's Role in the *Qui Tam* Actions that Recovered $440 Million

The underlying facts involving the investigation and litigation against Berman by the

government are well documented. <u>See</u> <u>United States v. Project on Gov't Oversight</u>, 839 F. Supp.

2d 330, 333 (D.D.C. 2012) ("POGO 3") (citing cases). Berman was a senior economist in the

Department of Interior when he became concerned that oil companies were underpaying

royalties to the federal government when they extracted oil from federal or Native American

lands. <u>Id.</u> Beginning in 1986, Berman advocated "the use of the New York Mercantile Exchange

crude oil price-as opposed to the allegedly less accurate spot industry posted prices-for royalty

valuations," but his efforts were opposed by the Mineral Management Services and he was

ultimately told by a supervisor to cease his work on the "royalty issues." United States v. Project on Gov't Oversight, 525 F. Supp. 2d 161, 163 (D.D.D. 2007) ("POGO 2").

In June 1994, an internal memorandum written by Berman was leaked to the nonprofit watchdog Project on Government Oversight ("POGO"). POGO 3, 839 F. Supp. 2d at 333. That group then contacted Berman, who provided it with guidance on how the industry worked and what kind of requests it should make under the Freedom of Information Act ("FOIA") in order to reveal illegal practices carried out by the oil companies. Id. Based in part on information obtained through FOIA with Berman's help, POGO filed two *qui tam* actions to recover unpaid royalties, under the False Claims Act, in the United States District Court for the Eastern District of Texas.

The United States intervened in the suits and ultimately recovered $440 million from multiple oil companies. See United States v. Project on Gov't Oversight, 454 F.3d 306, 307 (D.C. Cir. 2006) ("POGO 1"). According to the Department of Justice, this included, as of 2001: $110 million from Shell Oil Company; $45 million from Mobil Oil; $7.3 million from Oxy USA, Inc.; $95 million from Chevron; $26 million from Conoco; $32 million from BP Amoco; $43 million from Texaco; $11.9 million from Pennzoil; $2.7 million UPRC; $200,000 from Sun Oil Company; $13 million from Kerr-McGee; and $7 million from Exxon. See Press Release, United States Department of Justice, "Shell Oil to Pay United States $110 Million for Underpayment of Oil Royalties" (Jan. 23, 2001).[1]

Before filing suit, POGO asked Berman if he wished to join as a co-relator for the *qui tam* actions, but he declined. POGO 1, 454 F.3d at 307. Instead, he entered into an agreement with POGO whereby he would receive one third of whatever POGO recovered through the litigation; POGO also agreed to give a one-third share to Robert Speir, who was an economist at

---

[1] Available at http://www.justice.gov/opa/pr/2001/January/041civ.htm (last visited Nov. 11, 2013).

the Department of Energy who had helped POGO understand the issue of oil royalties. Id. In October 1998, POGO received a $1.2 million share of the first settlement from Mobil Oil, in the *qui tam* action, and it issued a check to Berman in November 1998 for $383,600. POGO 3, 839 F. Supp. 2d at 333. That check stated that it was a "Public Service Award," and an accompanying letter described it as an award for Berman's "decade-long public-spirited work to expose and stop the companies' underpayment of royalties for the production of crude oil on federal and Indian lands." Id.

### B. The Government's Criminal Investigation Against Berman and Subsequent Civil Proceedings

Despite having obtained settlements worth $440 million in part due to the actions of Berman, the government responded to Berman's whistleblowing and discovery of massive fraud by attempting to criminally prosecute him for violations of "Title 18 U.S.C. §§ 201 (bribery), 371 (conspiracy), 1001 (false statements), 1341, 1343 and 1346 (honest services mail fraud and wire fraud), and federal conflict of interest statute Title 18 U.S.C. §209 (salary of government employees payable only by the United States)." Affidavit of Special Agent Joseph D. Crook, Jr. [#3-1] at 1-2 ("Crook Affidavit").[2] The government's theory appears to have been the claim that Berman and Speir gave "proprietary information" to POGO, which enabled it to file the *qui tam* suit for which Berman received the $383,600 payment. Id. at 3.

The government's focus was—and remains—on the payment from POGO to Berman. According to the Crook Affidavit, "referring to Berman's payments as an award does not insulate the payment from the application of Section 209," which prohibits a government employee from receiving any "compensation for his services as an officer or employee of the

---

[2] The Crook Affidavit is the affidavit in support of the Application and Affidavit for Search Warrant [#3]; it is the document that Berman seeks to have released in full.

executive branch of the United States government . . . from any source other than the government of the United States." Id. at 6, 2 (citing 18 U.S.C. § 209(a)).[3]

Based on the Crook Affidavit, this Court issued a search warrant on March 15, 2000, authorizing the government to search:

> the desk, file cabinets, and other storage containers in Berman's government office, the desktop computer, any laptop computer, and floppy disks located in Berman's government office, the backup disk containing records that Berman had created and stored on the DOI server; the four drawer Mosler combination safe that is currently used by Berman for document storage and is contained in OPA storage room number 4462.

Id. at 13.[4] The government maintains that, shortly after the search, it provided an inventory of all items seized to Berman. See Government's Supplemental Motion to Seal Affidavit Supporting Application for Search Warrant [#9] at 2, n.1.

There is no question that a grand jury was convened to investigate Berman. Although Berman was under the impression—based on a motion *in limine* filed by the government in the civil case—that the grand jury refused to return an indictment, see Robert. A. Berman's Reply to Response by United States to Order to Show Cause [#32] at 4, the government maintains that it "closed Mr. Berman's investigation before seeking his indictment, and [that] he was not charged with any crimes." Response by United States to Order to Show Cause [#29] at 1. Regardless, no indictment was ever returned and, despite the issuance of a search warrant by this Court, Berman was never actually prosecuted.

The government instead sued Berman to disgorge him of the $383,600 payment; that litigation has been ongoing for over ten years, and it continues to this day.[5] Berman is currently

---

[3] All references to statutes are to the electronic versions that appear in Westlaw or Lexis.
[4] The Crook Affidavit references an "Attachment B" that lists the specific items to be seized. Although the Court has access to a copy of the Crook Affidavit, it does not have an "Attachment B." At this point, the search warrant is thirteen years old, and ECF was not in use until 2003. This quotation assumes that nothing was specified to be searched in Attachment B that was not specifically listed in the actual Crook Affidavit. This is further supported by the government's briefing, which says that it obtained a search warrant for Berman's "government office, computer equipment, and combination safe." [#24] at 2.

appealing Judge John Bates's ruling that the government is entitled to summary judgment on a claim of breach of fiduciary duty and that Berman must be disgorged of the $383,600.[6]

## C. Procedural History in This Court

### 1. The Initial Proceedings to Unseal the Crook Affidavit

This matter first came before the Court on March 15, 2000, when it issued a search warrant supported by the Crook Affidavit. See [#3]. In the intervening thirteen years, the Clerk's office has apparently destroyed all of the documents that were filed before 2008, and this Court did not begin using ECF until 2003. Although there are docket entries describing documents, the actual documents are missing. Through pure chance and serendipity, however, this Court discovered a cache of thirteen of the eighteen original pre-2008 documents in a filing cabinet in chambers. At the Court's request, the Clerk's office will scan these documents and attach them to their corresponding ECF entries so that they are available electronically.[7]

It is evident from the docket that, on the government's motion [#1] (missing), the Court sealed the proceedings contemporaneously with issuing the search warrant. See [#2] (missing). Berman first filed a motion to unseal the affidavit supporting the application for the search warrant on June 6, 2000, because "much, if not all, of what the government wishes to keep secret has already been publicly disclosed." See Motion of Robert A. Berman to Unseal Affidavit Supporting Application for Search Warrant [#5] at 2. Berman's motion claimed that the affidavit may not actually support a finding of probable cause for all of the items that were seized, and thus it needed to be unsealed so that he could potentially file a motion under what was then Rule

---

[5] The ongoing civil case is United States v. The Project on Government Oversight, 03-CV-96 (D.D.C.) (filed Jan. 21, 2003), and the latest substantive action was a Notice of Appeal to DC Circuit Court [#214] (Feb. 4, 2013).
[6] Berman was also fired from his job at the Department of Interior—despite "26 years of federal service, no prior discipline record, and a history of 'superior' ratings"—and appears to have a pending case before the Merit Service Protection Board. See Berman v. Dep't of Interior, 447 Fed. Appx. 186, 189 (Fed. Cir. 2011); see also [#32] at 3.
[7] They may not be available until several days after the issuance of this Memorandum Opinion and Order.

41(e) of the Federal Rules of Criminal Procedure.[8] The government claimed that revealing even a redacted version of the Crook Affidavit could adversely impact the "pre-indictment" investigation. <u>See</u> <u>Government's Opposition to Robert A. Berman's Motion to Unseal Affidavit Supporting Application for Search Warrant</u> [#6].

The Court issued a <u>Memorandum Opinion</u> [#8] on July 24, 2000, ordering the government to file a redacted affidavit and a supplemental brief explaining "why the portions of the affidavit it refuses to disclose must remain secret." <u>Id.</u> at 4. In response, the government provided both the Court *and* Berman with a redacted copy of the affidavit. <u>See</u> <u>Government's Supplemental Motion to Seal Affidavit Supporting Application for Search Warrant</u> [#9] at 1 ("the government has provided the Movant with a copy of the our [sic] Supplemental Motion and redacted affidavit.").

This motion included the <u>Declaration of Brenda K. Morris</u> [#9-2] ("Morris Declaration"), a trial attorney with the Public Integrity Section of the Criminal Division of the Department of Justice. The Morris Declaration stated that, among other reasons for the redactions, the government redacted "information which [sic] may potentially violate the secrecy protections of Rule 6(e) of the Federal Rules of Criminal Procedure." <u>Id.</u> at 3. More specifically, the Morris Declaration stated that portions of paragraph 29, all of paragraph 30, and paragraph 38 of the Crook Affidavit were redacted, among other reasons, "to protect information afforded Secrecy by Rule 6(e), Fed. R. Crim. P." <u>Id.</u> at 5. Although the government provided Berman with the redacted Crook Affidavit, there is no indication that it ever provided him with the Morris Declaration. In any event, the Morris Declaration makes clear that a grand jury was actively investigating Berman *before* the search warrant was issued by this Court in March 2000.

---

[8] This is now Rule 41(g).

Berman's opposition was filed on August 18, 2000, and it outlined numerous inconsistencies and alleged false statements in the Crook Affidavit. See Robert Berman's Response to the Government's Supplemental Motion to Seal Affidavit Supporting Application for Search Warrant [#10]. The Court then issued a Memorandum Order [#11] on August 23, 2000. That Order ruled that, by releasing the redacted Crook Affidavit, the government had "shift[ed] the burden to Berman to show why any greater disclosure was appropriate," and it gave Berman an opportunity to respond. [#11]. That Order did not reference Berman's response that had been filed the previous Friday. See Robert A. Berman's Response to Order to Show Cause [#16] at 1-2. Berman's subsequent response was the last filing by Berman on this issue until 2013. See id.

The Court extended the seal on the affidavit on September 18, 2000, see Order [#13], and again on April 10, 2001.[9] See [#18]. Interlineated by the Court on the September 18 Order is the stipulation that the case will be sealed until March 16, 2001, but "without prejudice to Berman's arguing that he is entitled to greater disclosure than the government has permitted." [#13] at 1. This Order was in response to Morris's assertions that the investigation was being completed but that a premature disclosure of what had been redacted might compromise the investigation. Id. It seems to have been animated by the idea that once the investigation was completed, the redacted parts might be available to Berman and disclosure then would not compromise the investigation.

## 2. The Apparent Unsealing of the Crook Affidavit

The Court has located a draft copy of its April 10, 2001, Order, which specified that the docket was to be unsealed on September 14, 2001. See [#18].[10] On the motion, there is a

---

[9] It appears that no certificate of service accompanied this motion, and it is unknown whether Berman was aware that this was ever filed. It is likely that, because the case was sealed, he never received a copy of the Court's Order.
[10] Because the Court was able to locate a draft copy of this Order, it will be posted on the docket under [#18]. Although it will not be the signed copy of the Order, it will help to make the docket more complete.

certificate of service from Morris to Berman's then-counsel of record. However, because the docket remained sealed, it is unlikely that Berman ever received a copy of the actual Order and thus never had confirmation that the Court had extended the seal. What is clear is that Berman did not attempt to access the docket until 2013. In fact, Berman's filings seem to indicate that he was unaware that the seal should have expired in 2001. See [#25] at 4.

Seven years later, Brenda Morris, who was still representing the government at the Public Integrity Section, filed a Motion to Unseal Search Warrant and Application [#19] because "sealing the warrant and application in this case is no longer necessary to protect the underlying closed criminal investigation." Morris, though, failed to provide a certificate of service with the motion that should have showed service on Berman. When the government, in the ordinary course, moves to seal or unseal a document in the pre-indictment stage there is, of course, no opposing party as there is in an ordinary civil suit. But, in this case, Berman had started the judicial proceedings by making his motion. The Clerk's office should have realized that Morris should not have been permitted to file her motion without a certificate of service showing service upon Berman, who was the original movant.

In any event, Magistrate Judge Deborah Robinson, who was the duty magistrate judge at the time, signed the order that was attached to the motion by the government, Id. at 2, which ordered "that the search warrant application and affidavit in the above-styled case shall be Unseal [sic] from this time forward." Order to Unseal Search Warrant and Application [#20]. A notation on the docket sheet, dated February 1, 2008, indicates "Case unsealed as to Robert A. Berman." However, the docket never was unsealed, and it remains sealed to this day.

Judge Robinson's order unquestionably unsealed the affidavit. Unfortunately, the order did not unseal the *docket*, so no one, not even Berman, would have access to it even though he was the movant who started the entire proceeding in the first place.

The government, for its part, takes a slightly different view and notes in its first 2013 filing that "the Court already has, in fact, unsealed this case, and that the movant already has access to the requested search warrant application, except for portions previously redacted out of concern for grand jury secrecy." [#24] at 3. It notes that it is "not clear whether the Court intended the movant to have access to the complete and unredacted search warrant application." Id. However, it was the *government's* proposed order that Judge Robinson signed, and it contained no caveat or exception for material protected by grand jury secrecy.

### 3. Berman's 2013 Efforts to Unseal the Crook Affidavit

Apparently unaware of the government's actions in 2008, Berman—who is now *pro se*—filed the present Motion on March 6, 2013. In it, he appears to be requesting two categories of documents: "all sealed documents filed with this Court and pursuant to the federal grand jury investigation," [#21] at 3, including "documents used to obtain financial and tax records," and "the affidavit supporting a search warrant [the Court] issued." Id. at 1. Thus, his present Motion is broader than that which was litigated in 2000, as it also seeks all documents pertaining to the grand jury investigation.

In response, this Court, via a Minute Order issued on July 1, 2013, ordered the government to submit redacted and unredacted versions of the Crook Affidavit *in camera*, which it subsequently did.[11] The Court did not, however, request that the government produce *in*

---

[11] There is no ECF entry for the submission of these documents *in camera*, but the Court has them in hard copy. There are three versions: one identical to the redacted version released in 2000, one with only the grand jury information redacted, and one unredacted. The only version that has not been previously filed with the Court is the one with only the grand jury information redacted.

*camera* any grand jury materials that may be in its possession. The government's current position is that "[w]ith the exception of grand jury material, the United States does not oppose providing the movant with access to the search warrant affidavit at issue, particularly because the Court unsealed this case in 2008." [#24] at 3. It also opposes the release of any "grand jury subpoenas"—and presumably any other grand jury information—that Berman may be seeking. Id.

## II. Legal Analysis

### A. Judge Robinson Has Already Ordered the Crook Affidavit Unsealed in Full

Berman's Motion is moot to the extent that it requests that the Crook Affidavit be unsealed in full because Judge Robinson ordered precisely this relief on February 1, 2008. See [#20]. It is understandable that Berman did not know that the Crook Affidavit had been unsealed because the *docket* was still sealed, and, again, there is no indication that Berman received a copy of either the motion that was filed or the order granting it. Judge Robinson ordered that the "search warrant application and affidavit in the above-styled case shall be Unseal [sic] from this time forward." [#20]. Thus, the Clerk's office unsealed only those two documents, not the entire case and docket, which had the practical effect of continuing to prevent the public, including Berman, from accessing these documents.

Judge Robinson gave the government precisely the relief that it requested, and she did so by signing the order that the *government* attached to its motion. See [#19] at 2. By 2008, the original documents in this case, including all of the filings, had been destroyed and Judge Robinson, having never been involved with the original litigation in 2000 and 2001, would not have known that Berman was actively attempting to obtain the Crook Affidavit. On the other hand, though, Brenda Morris submitted the motion and was herself acutely aware of Berman's

interest, as she was the government attorney who litigated the original motion to unseal before this Court.

The government has suggested that Judge Robinson's order did not "make clear whether the Court intended the movant to have access to the complete and unredacted search warrant application." [#24] at 3. It then asked this Court to "clarify" that Judge Robinson's order "provides the movant only with access to information not shielded by Rule 6(e)." Id. at 5.

There is, however, no other reasonable reading of Judge Robinson's order—and the motivations of Brenda Morris in filing the government's 2008 motion—other than that the government and Judge Robinson fully intended Berman to have access to the full, unredacted Crook Affidavit. The only document on the entire record that was *ever* sealed was the application for the search warrant, which incorporated the Crook Affidavit. See, e.g., [#17] (requesting that the seal on the "Affidavit Supporting Application for Search Warrant" be sealed for an additional six months). There was simply nothing else to be unsealed other than this document. Although the government is now arguing that neither its motion nor Judge Robinson's order intended to allow Berman access to grand jury information in the Crook Affidavit, this position has no basis in the record. The government unequivocally asked for the Crook Affidavit to be unsealed and, five years later, this Court intends to make sure that it actually is.[12]

### B. The Docket in This Matter Shall Be Unsealed in Full

In light of Judge Robinson's order, this Court will Order that the docket on this matter be unsealed in full. The only document that is sealed in this matter is the application for the search warrant and the incorporated Crook Affidavit; once it is unsealed, there is no reason to have the

---

[12] Because this issue is moot, there is no reason to address the appropriate standards for disclosure under Rule 6(e)(3)(E)(i) of the Federal Rules of Criminal Procedure.

remainder of the docket sealed. Unsealing the docket will also have the ancillary effect of giving Berman a more accurate picture of what has happened in this matter in the past thirteen years.

The Court notes that Berman wishes for his private financial information to remain off the public docket. <u>See</u> [#21] at 3, n.1 ("Petitioner does not intend that this unredacted document be public as it contains confidential personal and financial information."). Accordingly, the Court will Order that Berman's Motion, [#21], and Reply, [#25] remain under seal. Berman is instructed to file public copies of each that redact his personal financial information.

### C. Disclosure of Other Grand Jury Materials

This Court will interpret Berman's request for additional grand jury materials as a petition under Rule 6(e)(3)(E)(i) of the Federal Rules of Criminal Procedure. It is likely that, after all of these years, those documents no longer exist or some or all of them have been disclosed to Berman in the civil actions described above. The government will advise the Court in writing whether: 1) the records still exist; and 2) whether any or all of them have been made available to Berman. Once the Court is so advised, it will reach the legal issues presented in Berman's application for grand jury material, if necessary. <u>See</u> <u>Douglas Oil Co. v. Petrol Stops Northwest</u>, 441 U.S. 211 (1979). No further briefing is required from the parties at this time.

### III. Conclusion and Order

For the reasons stated above, it is hereby **ORDERED** that:

1. The Clerk's office shall unseal and make public the entire docket and all documents in this matter with the exception of the <u>Motion to Unseal Search Warrant Affidavit(s)</u> [#21] and <u>Reply to Response Motion to Unseal Search Warrant Affidavit(s)</u> [#25];

2. Berman shall file a public version of the <u>Motion to Unseal Search Warrant Affidavit(s)</u> [#21] and <u>Reply to Response Motion to Unseal Search Warrant Affidavit(s)</u> [#25] no later than December 6, 2013, with only financial information redacted;

3. The government shall publicly file, on ECF, no later than December 17, 2013, an explanation of which grand jury materials are still in existence and whether any or all of them have been made available to Berman.

**SO ORDERED**.


_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE